IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BUREAU OF CONSUMER FINANCIAL
PROTECTION,
1700 G Street, NW
Washington, DC 20552                                    Case No. 1:20-cv-3550

Plaintiff,

v.

NATIONSTAR MORTGAGE LLC,
d/b/a MR. COOPER,
8950 Cypress Waters Boulevard
Coppell, TX 75019

Defendant.

## ~~PROPOSED~~ STIPULATED FINAL JUDGMENT AND ORDER

The Bureau of Consumer Financial Protection ("Bureau") commenced this civil action
on December 7, 2020 to obtain injunctive and monetary relief and civil penalties from
Defendant Nationstar Mortgage LLC, d/b/a Mr. Cooper.  The Complaint alleges violations of
(1) Sections 1031 and 1036 of the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. §§
5531, 5536; (2) Sections 6 and 19 of the Real Estate Settlement Procedures Act ("RESPA"), 12
U.S.C. §§ 2605, 2617, and the regulations promulgated thereunder at Regulation X, 12 C.F.R. §
1024 *et seq.* ("RESPA Mortgage Servicing Rule"); and (3) Sections 4902(a) and (b) of the
Homeowners Protection Act of 1998, 12 U.S.C. § 4902 ("HPA").

The Bureau and Defendant agree to entry of this Stipulated Final Judgment and Order
("Order"), without adjudication of any issue of fact or law, to settle and resolve all matters in
dispute arising from the conduct alleged in the Complaint.

# I
## FINDINGS

1.    This Court has jurisdiction over the parties and the subject matter of this action.

2.    The Complaint alleges claims for relief under (1) Sections 1031 and 1036 of the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. §§ 5531, 5536; (2) Sections 6 and 19 of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2605, 2617, and the regulations promulgated thereunder at Regulation X, 12 C.F.R. § 1024 *et seq.* ("RESPA Mortgage Servicing Rule"); and (3) Section 4902(b) of the Homeowners Protection Act of 1998, 12 U.S.C. § 4902(b) ("HPA").

3.    Defendant neither admits nor denies the allegations in the Complaint, except as specified in this Order. For purposes of this Order, Defendant admits the facts necessary to establish the Court's jurisdiction over it and the subject matter of this action.

4.    Defendant waives all rights to seek judicial review or otherwise challenge or contest the validity of this Order and any claim it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each Party agrees to bear its own costs and expenses, including, without limitation, attorneys' fees.

5.    Entry of this Order is in the public interest.

# II
## DEFINITIONS

6.    The following definitions apply to this Order:

    a.    "Affected Consumers" includes any Borrower whose mortgage loan was serviced by Defendant between January 1, 2012 and the Effective Date and:

        i.    from whom Defendant collected monthly modified mortgage loan payment amounts where the amounts charged for principal and interest exceeded the principal and interest amounts contained in the trial plan agreement ("Modification Payment Increase Borrowers");

      ii.  from whom Defendant collected escrow shortages for borrowers on a completed Chapter 13 bankruptcy plan that were not legally due ("Escrow Borrowers");

     iii.  for whom Defendant failed to timely remit property taxes ("Tax Disbursement Borrowers");

     iv.  for whom Defendant failed to timely remove private mortgage insurance as required by 12 U.S.C. §4902(a) or (b) ("PMI Borrowers");

      v.  upon whom Defendant foreclosed while the borrowers were pursuing loss mitigation options ("Unlawful Foreclosure Borrowers"); or

     vi.  whose in-flight modifications Defendant failed to appropriately identify when a loan was being onboarded for servicing ("In-flight Modification Borrowers").

b.  "Annual Lookback" means an annual audit of Defendant's mortgage servicing portfolio designed to identify Modification Payment Increase Borrowers who continued to pay under modified monthly principal and interest payment amounts that exceed their trial modification plan's monthly principal and interest payment amounts, and for whom additional redress is required.

c.  "Board" means Defendant's duly-elected and acting Board of Directors, or similar body with commensurate powers and authorities.

d.  "Borrower" means a borrower, co-borrower, or successors-in-interest with a residential mortgage loan.

e.  "Declared Remediation" means the $57,723,049 in redress payments or credits that Defendant made to Affected Consumers prior to the Effective Date, for the purpose of providing remediation for Borrower injury resulting from the conduct described in the Complaint. Declared Remediation consists of the following categories and amounts of redress:

      i.  $16,242,809 to In-flight Modification Borrowers;

  ii. $9,728,960 to Modification Payment Increase Borrowers;

  iii. $93,307 to Tax Disbursement Borrowers;

  iv. $10,832,738 to PMI Borrowers; and

  v. $20,825,235 to Escrow Borrowers.

f. "Defendant" means Nationstar Mortgage LLC, and its successors and assigns.

g. "Effective Date" means the date on which the Order is entered by the Court.

h. "Modification Payment Increase" means the amount by which a Borrower's monthly modified mortgage loan principal and interest payment amount exceeds their monthly trial modification plan's principal and interest payment amount.

i. "Regional Director" means the Regional Director for the Southeast Region for the Office of Supervision for the Bureau of Consumer Financial Protection, or his or her delegate.

j. "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against the Defendant based on substantially the same facts as described in the Complaint.

k. "Servicing Transfer" means a situation in which the Defendant is acting as a Transferee Servicer or Transferor Servicer.

l. "System" means a location in which electronically-stored information is captured, recorded, or maintained that is within the Defendants' possession, custody, or control, including, without limitation, applications, databases, and other locations in which electronically-stored information is captured, recorded, or maintained by a third-party.

m. "Transferee Servicer" is synonymous in meaning and equal in scope to the definition of the term, as of the Effective Date, in 12 C.F.R. § 1024.31.

n. "Transferor Servicer" is synonymous in meaning and equal in scope to the definition of the term, as of the Effective Date, in 12 C.F.R. § 1024.31.

## III

## CONDUCT PROVISIONS

**IT IS ORDERED that:**

*Error Resolution*

7.    Defendant and its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, who have actual notice of this Order, whether acting directly or indirectly, must enhance and implement its policies, processes, and controls for handling consumer complaints, disputes, and notices of error (collectively "Complaint(s)"), whether communicated in English or a foreign language, in order to:

a. maintain an online consumer complaint form that is readily accessible to Borrowers, allows Borrowers to submit full and complete information along with their consumer complaints, and provides Borrowers a receipt indicating the time and date of submission;

b. provide timely and accurate information to Borrowers about how to submit Complaints;

c. maintain sufficient and trained personnel devoted to researching and resolving Complaints;

d. consider all available information, including that provided by the complainant and in Defendant's Systems, to resolve Complaints;

e. accurately document each error identified in a Complaint and the resolution of the Complaint;

f. if an error had occurred, accurately and fully correct the errors, and communicate such corrections to the complainant; and

g. conduct root cause analyses where Nationstar has reason to believe
Complaints may be related to systemic errors, in order to identify all
applicable systemic errors and identify other Borrowers who may be affected
by such errors.

*Escrow Management*

8.    Defendant and its officers, agents, servants, employees, and attorneys who have
actual notice of this Order, whether acting directly or indirectly, shall:

a. accurately and timely conduct an escrow analysis of a Borrower's account at
the end of the escrow account computation year where Defendant maintains
an escrow account for the Borrower, as required by 12 C.F.R. § 1024.17(c)–(f);

b. accurately and timely pay a Borrower's hazard insurance and taxes where
Defendant maintains an escrow account for the Borrower, as required by 12
C.F.R. § 1024.17(k);

c. include accurate information in a Borrower's initial, annual, and short-year
escrow statements and periodic statements, as required by 12 C.F.R. §
1024.17(g)–(j); and

d. communicate to the Borrower and, where required (or requested by the
Borrower), third parties (*e.g.*, courts) the amounts, including the escrow
component of a monthly mortgage payment amount, that a Borrower owes.

*Servicing Transfers*

9.    Defendant and its officers, agents, servants, employees, and attorneys, and all
other persons in active concert or participation with them, who have actual notice of this
Order, whether acting directly or indirectly, must maintain policies and procedures that are
reasonably designed to facilitate transfer of information during servicing transfers, as required

by 12 C.F.R. § 1024.38(a)–(b). These policies and procedures must include, but not be limited to, the following affirmative actions in connection with Servicing Transfers:

    a. communicate with counterparties sufficiently in advance of a Servicing Transfer to allow for the development of a servicing transfer plan, which shall:

        i. identify the obligations of all relevant parties,

        ii. include a communications plan,

        iii. include a testing plan with testing protocols to evaluate the compatibility of the transferred data with the Transferee Servicer's systems and data mapping protocol,

        iv. include a timeline with key milestones,

        v. include an escalation plan for potential problems, and

        vi. determine whether a Servicing Transfer can be implemented successfully in a single batch of all accounts and, if it cannot, implement alternative protocols, such as splitting the transfer into several smaller bundles of accounts to be transferred in subsequent months, to ensure that the Transferee Servicer can comply with its servicing obligations for the transferred loans;

    b. identify material issues that could potentially impact the accuracy or completeness of the loan data or documentation to be transferred as well as each servicer's ability to comply with the law or investor guidelines with respect to the transferred loans;

    c. identify any loans in default, active foreclosure and bankruptcy, and, where applicable, require documentation regarding loss mitigation activity for each loan, including status and notes pertaining to the loss mitigation action, copies of agreements entered into with a borrower on a loss mitigation option, and any analysis by a servicer with respect to potential recovery from a non-performing mortgage loan; and

    d. engage in quality control work after a transfer of preliminary data to validate that the data on the Transferee Servicer's system matches the data submitted by the Transferor Servicer, prioritizing data mapping errors that occurred during the de-boarding or on-boarding process for resolution.

*Loss Mitigation Practices*

10. Defendant and its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, who have actual notice of this Order, whether acting directly or indirectly, must not offer and accept a permanent mortgage modification where the modified monthly principal and interest payment amount exceeds the monthly principal and interest payment amount in the relevant trial modification agreement, unless permitted to do so:

    a. by state or federal law;

    b. under specific modification program rules, official guidelines or official interpretations;

    c. under applicable investor requirements; or

    d. in order to offer a permanent modification which is different from the trial modification agreement due to a failure by the Borrower to make all required monthly payments according to the trial modification agreement, and which Defendant would otherwise not be permitted to offer.

*Private Mortgage Insurance*

11. Defendant and its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, who have actual notice of this Order, whether acting directly or indirectly, must enhance and implement reasonable policies, processes, and controls related to borrowers' Private Mortgage Insurance ("PMI") in order to, among other things:

    a. accurately communicate the requirements for canceling and terminating PMI to borrowers; and

b. ensure accurate and timely PMI cancelation and termination.

*Annual Lookback and Declared Remediation Audit*

12.    Defendant must conduct an Annual Lookback for four years after the Effective Date to identify Modification Payment Increase Borrowers who made a mortgage payment that included a Modification Payment Increase in that year.   Defendant will provide redress to identified Modification Payment Increase Borrowers in accordance with the Redress Plan referenced in Paragraphs 24 and 25 in the form of: (1) an account credit for those Modification Payment Increase Borrowers whose loans are actively being serviced by Defendant at the time of the Annual Lookback; or (2) a check for those Modification Payment Increase Borrowers whose loans are not actively being serviced by Defendant at the time of the Annual Lookback.

13.    Defendant must conduct an audit within 30 days of the Regional Director's determination of non-objection to Defendant's Redress Plan to ensure all Declared Remediation has been distributed to Affected Borrowers as required by this Order (Declared Remediation Audit).  The Declared Remediation Audit must include at a minimum, without limitation:

a.  The amount and type of redress (*i.e.*, credit or check) made to each Affected Consumer;

b.  The permanent address associated with each Affected Consumer when the borrower received the applicable redress;

c.  The date on which the Affected Consumer received, or was sent, the applicable redress;

d.  The applicable conduct by the Defendant for which the redress was provided;

e.  A certification, signed by the Board and sworn under penalty of perjury, that states that the Declared Remediation has been provided to Affected Consumers as of the Effective Date.

# IV

## Compliance Plan

**IT IS FURTHER ORDERED** that:

14.    Within 45 days of the Effective Date, Defendant must submit to the Regional Director for review and determination of non-objection a comprehensive compliance plan designed to ensure that Defendant's mortgage servicing practices and obligations addressed in Section III of this Order comply with all applicable Federal consumer financial laws and the terms of this Order (Compliance Plan). The Compliance Plan must include, at a minimum:

   a.   detailed steps for addressing each action required by this Order; and

   b.   specific timeframes and deadlines for implementation of the steps described above.

15.    The Regional Director will have the discretion to make a determination of non-objection to the Compliance Plan or direct Defendant to revise it. If the Regional Director directs Defendant to revise the Compliance Plan, Defendant must revise and resubmit the Compliance Plan to the Regional Director within 20 days of the date that the Regional Director directs Defendant to revise the Compliance Plan.

16.    After receiving notification that the Regional Director has made a determination of non-objection to the Compliance Plan, Defendant must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Compliance Plan.

# V

## Role of the Board

**IT IS FURTHER ORDERED** that:

17.    The Board must review all submissions (including plans, reports, programs, policies, and procedures) required by this Order prior to submission to the Bureau.

18.    The Board shall ensure, including through sworn certification pursuant to Paragraph 13 of this Order, that Declared Remediation has been provided to Affected Consumers as of the Effective Date;

19.    Although this Order requires Defendant to submit certain documents for review or non-objection by the Regional Director, the Board will have the ultimate responsibility for proper and sound management of Defendant and for ensuring that Defendant comply with the laws that the Bureau enforces, including Federal consumer financial laws and this Order.

20.    In each instance that this Order requires the Board to ensure adherence to, or perform certain obligations of Defendant, the Board must:

   a.  Authorize whatever actions are necessary for Defendant to fully comply with the Order;

   b.  Require timely reporting by management to the Board on the status of such compliance obligations; and

   c.  Require timely and appropriate corrective action to remedy any material non-compliance with any failures to comply with Board directives related to this Section.

## MONETARY PROVISIONS

## VI

### Order to Pay Redress

**IT IS FURTHER ORDERED** that:

21.    A judgment for monetary relief is entered in favor of the Bureau and against Defendant in the amount of $15,623,305 (Judgment Amount) to be deposited into an escrow account established for the sole purpose of providing redress to Affected Consumers as set forth in Paragraph 22 (Escrow Account).

22.    No later than 10 days after the Effective Date, Defendant must deposit $15,623,305 into the Escrow Account as required by this Section and according to instructions provided by the Bureau. The Escrow Account will be administered pursuant to the Redress Plan, described in Paragraphs 24 and 25, by a settlement administrator (Administrator) who will be retained and paid for by Defendant without any charge against the escrowed funds. The Administrator will issue redress checks to Affected Consumers within 45 days of the receipt of a non-objection to the Redress Plan referred to in Paragraphs 24 and 25. The Administrator will provide the redress as required by, and in accordance with, the Redress Plan, as follows:

a.    $13,500,000 million to Modification Payment Increase Borrowers as redress for Modification Payment Increases incurred prior to the Effective Date;

b.    $2,023,305 to Escrow Borrowers as redress for Defendant's collection of amounts relating to escrow shortages and who have not already received Declared Remediation for such collection; and

c.    $100,000 to Unlawful Foreclosure Borrowers as redress for foreclosure-related injuries.

23.    Defendant shall file a notice with the Court after the Judgment Amount is deposited into the Escrow Account as required by Paragraph 22. The full and timely deposit of

Judgment Amount into the Escrow Account pursuant to this Order shall satisfy the judgment for monetary relief.

24.    Within 30 days of the Effective Date, Defendant must submit to the Regional Director for review and non-objection a comprehensive written plan for providing redress consistent with this Order (Redress Plan). The Regional Director will have the discretion to make a determination of non-objection to the Redress Plan or direct the Defendant to revise it. If the Regional Director directs the Defendant to revise the Redress Plan, the Defendant must revise and resubmit the Redress Plan to the Regional Director within 20 days. After receiving notification that the Regional Director has made a determination of non-objection to the Redress Plan, the Defendant must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Redress Plan.

25.    The Redress Plan must:

  a. Specify how Defendant will identify Affected Consumers for the purpose of distributing redress under Paragraph 22 of this Order;

  b. Include the form of the letter (Redress Notice) and envelope to be sent notifying Affected Consumers, who are entitled to redress pursuant to the Redress Plan, of their right to redress; the Redress Notice must include a statement that the payment is made in accordance with the terms of this Order; Defendant must not include in any envelope containing a Redress Notice any materials other than the approved Redress Notices and redress checks, unless Defendant has written confirmation from the Regional Director that the Bureau does not object to the inclusion of such additional materials;

  c. Describe the process for distributing redress to Affected Consumers, and include the following requirements:

    i. Prior to sending redress checks and Redress Notices, Defendant must make reasonable attempts to obtain a current address for each Affected

Consumer entitled to redress using, at a minimum, the National
Change of Address system; and

ii. Defendant must mail a redress check(s) and the Redress Notice(s) to
each Affected Consumer entitled to redress under the Redress Plan.

26.    After completing the Redress Plan, if the total amount of redress distributed to
Affected Consumers from the Escrow Account is less than $15,623,305, within 45 days of the
completion of the Redress Plan, Defendant must ensure that all uncashed checks issued to
Affected Consumers according to the Redress Plan, that have passed their stale date, are
escheated to the state of the borrower's last known permanent address, in order to permit such
borrower, or such borrower's rightful heirs, to claim such amount pursuant to that state's
processes for collecting unclaimed funds.

27.    Defendant may not condition the payment of any redress to any Affected
Consumer under this Order on that Affected Consumer waiving any right.

# VII

## Order to Pay Civil Money Penalty

**IT IS FURTHER ORDERED** that:

28.    Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the
violations of law alleged in the Complaint and taking into account the factors in 12 U.S.C. §
5565(c)(3), Defendant must pay a civil money penalty of $1,500,000 to the Bureau.

29.    Within 10 days of the Effective Date, Defendant must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

30.    The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by Section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

31.    Defendant shall file a notice with the Court when the civil money penalty is paid as required by Paragraph 29.   The full and timely payment of the civil money penalty to the Bureau shall satisfy the judgment for the civil money penalty.

32.    Defendant must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendant may not:

        a.  Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

        b.  Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

## VIII

## Additional Monetary Provisions

**IT IS FURTHER ORDERED** that:

33.    In the event of any default on Defendant's obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any

outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

34.    Defendant must relinquish all dominion, control, and title to the funds paid under this Order to the fullest extent permitted by law and no part of the funds may be returned to Defendant.

35.    The facts alleged in the Complaint will be taken as true without further proof in any subsequent litigation by or on behalf of the Bureau in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargability complaint in any bankruptcy case.

36.    The facts alleged in the Complaint establish all elements necessary to sustain an action by the Bureau under Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and for such purposes this Order will have collateral estoppel effect against Defendant, even in Defendant's capacity as debtor-in-possession.

37.    Under 31 U.S.C. § 7701, Defendant, unless it has already done so, must furnish to the Bureau its taxpayer-identification number, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

38.    On an annual basis for 10 years from the Effective Date, Defendant must provide the Regional Director in writing with the total number of final judgments, consent orders, or settlements in Related Consumer Actions during the preceding year (Related Consumer Action Report). The Related Consumer Action Report must indicate the amount of redress, if any, that Defendant paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid. To preserve the deterrent effect of the civil money penalty in any Related Consumer Action Defendant may not argue that Defendant is entitled to, nor may Defendant benefit by, any offset or reduction of any monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund. If the court in any Related Consumer Action offsets or otherwise reduces the amount of

compensatory monetary remedies imposed against Defendant based on the civil money penalty paid in this action or based on any payment that the Bureau makes from the Civil Penalty Fund, Defendant must, within 30 days after entry of a final order granting such offset or reduction, notify the Bureau and pay the amount of the offset or reduction to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

## COMPLIANCE PROVISIONS

## IX

### Reporting Requirements

**IT IS FURTHER ORDERED** that:

39.    For 10 years from the Effective Date, Defendant must notify the Bureau of any development that may affect compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Defendant; or a change in Defendant's name or address. Defendant must provide this notice at least 30 days before the development or as soon as practicable after the learning about the development, whichever is sooner.

40.    Within 7 days of the Effective Date, Defendant must:

a.  Designate at least one telephone number and email, physical, and postal address as points of contact, which the Bureau may use to communicate with Defendant;

b.  Identify all businesses for which Defendant is the majority owner, or that Defendant directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; and

c.  Describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales.

41.     For 10 years from Effective Date, Defendant must report any change in the information required to be submitted under Paragraph 39 at least 30 days before the change or as soon as practicable after learning about the change, whichever is sooner.

42.     Within 90 days of receiving notice of non-objection to the Compliance Plan, and again one year after receiving notice of non-objection to the Compliance Plan, Defendant must submit to the Regional Director an accurate written compliance progress report sworn to under penalty of perjury (Compliance Report) that has been approved by the Board which, at a minimum:

      a.  Lists each applicable paragraph and subparagraph of the Order and describes in detail the manner and form in which Defendant has complied with each such paragraph and subparagraph of this Order;

      b.  Describes in detail the manner and form in which Defendant has complied with the Redress Plan and Compliance Plan; and

      c.  Attaches a copy of each Order Acknowledgment obtained under Section X, unless previously submitted to the Bureau.

## X

### Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED** that,

43.     Within 7 days of the Effective Date, Defendants must submit to the Regional Director an acknowledgment of receipt of this Order, sworn under penalty of perjury.

44.     Within 30 days of the Effective Date, Defendant must deliver a copy of this Order to each of its Board members and executive officers as well as to any managers, employees,

service providers, or other agents and representatives who have management responsibilities related to the subject matter of the Order.

45.    For 5 years from the Effective Date, Defendant must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section IX, any future board members and executive officers before they assume their responsibilities.

46.    Defendant must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. § 7001 *et seq.*, within 30 days of delivery, from all persons receiving a copy of this Order under this Section.

## XI
## Recordkeeping

**IT IS FURTHER ORDERED** that

47.    Defendant must create, or if already created must retain, for at least 7 years from the Effective Date, the following business records:

    a.  All documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau; and

    b.  All documents and records pertaining to the Redress Plan, described in Section VI above.

48.    Defendant must maintain, for at least 5 years from the Effective Date or 5 years after creation, whichever is longer, all Complaints (whether received directly or indirectly, such as through a third party), and any responses to those Complaints.

49.    Defendant must make these materials available to the Bureau upon the Bureau's request.

## XII

## Notices

**IT IS FURTHER ORDERED** that:

50.    Unless otherwise directed in writing by the Bureau, Defendant must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "*CFPB v. Nationstar LLC,* Case No. 1:20-cv-3550," and send them by overnight courier or first-class mail to the below address and contemporaneously by email to Enforcement_Compliance@cfpb.gov:

> Regional Director, CFPB Southeast Region
>
> Peachtree Summit Building
>
> 401 W. Peachtree Street
>
> Atlanta, GA 30308

## XIII

## Cooperation with the Bureau

**IT IS FURTHER ORDERED** that:

51.    Defendant must cooperate fully to help the Bureau determine the identity and location of, and the amount of injury sustained by, each Affected Consumer. Defendant must

provide such information in its or its agents' possession or control within 14 days of receiving a written request from the Bureau.

## XIV

## Compliance Monitoring

**IT IS FURTHER ORDERED** that, to monitor Defendant's compliance with this Order:

52.    Within 20 days of receipt of a written request from the Bureau, Defendant must submit compliance reports or other requested information related to requirements of this Order, which must be sworn under penalty of perjury; provide sworn testimony related to requirements of this Order and Defendant's compliance with those requirements; or produce documents related to requirements of this Order and Defendant's compliance with those requirements.

53.    Defendant must permit Bureau representatives to interview about the requirements of this Order and Defendant's compliance with those requirements any employee or other person affiliated with Defendant who has agreed to such an interview. The person interviewed may have counsel present.

54.    Nothing in this Order will limit the Bureau's lawful use of compulsory process, under 12 C.F.R. § 1080.6.

## XV

## Release

55.    The Bureau releases and discharges Defendant from all potential liability for law violations that the Bureau has or might have asserted based on the practices alleged in the Complaint, to the extent such practices occurred before the Effective Date and the Bureau knows about them as of the Effective Date.

56.    The Bureau may use the practices alleged in the Complaint in future enforcement actions against Defendant or its affiliates, including, without limitation, to

establish a pattern or practice of violations or the continuation of a pattern or practice of violations, or to calculate the amount of any penalty.

57.    This release does not preclude or affect any right of the Bureau to determine and ensure compliance with this Order, or to seek penalties for any violations of the Order.

## XVI

### Retention of Jurisdiction

**IT IS FURTHER ORDERED** that:

58.    The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.

**IT IS SO ORDERED**.

DATED this _8_ day of December, 2020.

_____

United States District Court Judge

J. Boasberg

Dated:  December 7, 2020

Respectfully Submitted,

Attorneys for Plaintiff
Bureau of Consumer Financial Protection,

JOHN C. WELLS
Deputy Enforcement Director

RICHA S. DASGUPTA
Assistant Deputy Enforcement Director

/s/ Christian H. Woolley
Christian H. Woolley
Senior Litigation Counsel
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, DC 20552
E-mail: christian.woolley@cfpb.gov
Phone: 202-435-9189
Pennsylvania Bar No. 205486

Jean M. Healey
Senior Litigation Counsel
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, DC 20552
Email: jean.healeydippold@cfpb.gov
Phone: 202-435-7514
Massachusetts Bar No. 660456

J. Douglas Wilson
Senior Litigation Counsel
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, DC 20552
E-mail: doug.wilson@cfpb.gov
Phone: 202-435-9151
DDC Bar No: 991055

| For Defendant: | |
|---|---|
| /s/ Jesse K. Bray<br>JESSE K. BRAY<br>President & Chief Executive Officer<br>Nationstar Mortgage LLC, dba<br>Mr. Cooper<br>8950 Cypress Waters Blvd<br>Coppell, TX 75019 | /s/ Thomas M. Hefferon<br>THOMAS M. HEFFERON<br>DC Bar No. 461750<br>MATTHEW L. RIFFEE<br>DC Bar No. 1022979<br>Goodwin Procter LLP<br>1900 N Street, NW<br>Washington, DC 20036<br>Tel: 202-346-4000<br>thefferon@goodwinlaw.com<br>mriffee@goodwinlaw.com |